## MEIER v. CITY OF ST. LOUIS, Appellant, et al.

**In Banc, March 9, 1904.**

1. **SPECIAL TAXATION: Power.** Special assessments for local improvements are referable to the taxing power.

2. ——: **Manner of Assessment.** It is within the power of the Legislature to create a special taxing district, and to charge the cost of a local improvement, in whole or in part, upon the property in said district, either according to valuation, or superficial area or frontage.

3. ——: ——: **Constitutionality.** The provisions of article 10 of the Missouri Constitution in regard to maximum rates of taxation, are applicable only to taxation in the ordinary acceptation of the term, and are inapplicable to special assessments to pay the costs of local improvements.

4. ——: ——: ——: **Uniformity.** So also are provisions of the Missouri Constitution in regard to uniformity of taxation inapplicable to special assessments to pay the costs of street improvements or other local improvements.

5. ——: ——: ——: **St. Louis Charter.** The amendments to the charter of the city of St. Louis in regard to special taxation for paying the costs of street improvements, are not unconstitutional.

Meier v. St. Louis.

6. ———: **Due Process of Law: Notice.** No notice is required by the Constitution to be given to property-owners respecting those matters which the Legislature determines, or delegates to a municipal assembly. Publication of notice to the property-owners, and the giving of an opportunity to them to be heard before the tribunal upon which is devolved the duty of ascertaining the facts and acting therein in a special assessment procedure for improvement of a street, satisfies the constitutional requirement and is due process of law as to those matters which are to be passed upon by that tribunal.

7. ———: ———: **Apportionment of Cost: Benefit Conferred.** When the taxing district has been fixed by valid legislation, and when the apportionment of the cost of the improvement upon the property of the district has been so fixed, the owner of the property in the district can not be heard to contend in court, in a suit in equity to cancel the taxbills, that his property was not in fact benefited, or to the amount assessed in accordance with such apportionment.

8. ———: **Charter of St. Louis: Force and Effect.** The charter of St. Louis adopted by a vote of the people in obedience to an express grant of the Constitution has, with respect to municipal matters, including special assessments for local improvements, all the force and effect of an act of the Legislature.

9. ———: **Front Lot: Exceptions.** The words "the property or lot fronting on the street to be improved," as used in the amendment to the St. Louis charter, where the lot to be assessed with three-fourths of the cost of the improvement is an unplatted tract and fronts on a street other than that to be improved, refer only to such property as actually fronts or faces upon the street to be improved. Unless the property fronts on the street to be improved, it does not fall within the exception made in the charter.

10. ———: **Fronting, Adjoining and Abutting.** The words "fronting," "adjoining" and "abutting," as used in the charter amendments, are not synonymous. They are by the amendments made to refer to distinct subjects or conditions.

11. ———: **Unplatted Lots: Midway Rule.** Where property has not been divided into lots, whether platted and recorded, or divided into lots not platted and recorded, then the exception that the cost of the improvement of a street other than that on which the property fronts, may be assessed against the entire property, has no application, but the "midway" rule must govern, and only half of the property or tract can be taxed with three-fourths of the cost of the improvement.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald*, Judge.

AFFIRMED.

*Chas. W. Bates* and *Benj. H. Charles* for appellants.

(1) Special assessments for local improvements are made under the taxing power. Garrett v. St. Louis, 25 Mo. 508; Heman v. Allen, 156 Mo. 543; s. c., 181 U. S. 402; Heman v. Schulte, 166 Mo. 409, 189 U. S. 507; Barber Asphalt Paving Co. v. French, 158 Mo. 545, (same case as French v. B. A. P. Co., 181 U. S. 324); Moberly v. Hogan, 131 Mo. 23; Wright v. Davidson, 181 U. S. 379; Fallbrook, etc., Co. v. Bradley, 164 U. S. 176; Pittsburg v. Sterrett Subdistrict School, 204 Penn. 636, 61 L. R. A. 183. Special assessment is a tax on the benefit rather than on the property. Newby v. Platte County, 25 Mo. 272; Garrett v. St. Louis, 25 Mo. 513. (2) It is a universal rule that the determination by the Legislature of questions resting, under the Constitution, in the judgment of the Legislature, is final and conclusive. This is emphatically true with respect to such questions so determined by special assessment as well as other taxation statutes. St. Charles ex rel. v. Deemar, 174 Mo. 122; Bridge Co. v. Henderson, 173 U. S. 614; Webster v. Fargo, 181 U. S. 394. The constitutionality and conclusiveness of the action of the legislative department can no longer be questioned in its determination: First: That the cost of local improvements, such as the construction of streets, sidewalks, alleys, sewers, drains, ditches, levees and the like, shall be paid in whole or in part by special assessments. Pryor v. Construction Co., 170 Mo. 448; Barber Asphalt Paving Co. v. French, supra; Heman v. Allen, 156 Mo. 543 (same case as Shumate v. Heman, 181 U. S. 402;) Chadwick v. Kelley, 187 U. S. 540. Second:

In defining the taxing district, and in determining what portion of the property that is or may be benefited by the improvement shall be charged with the costs thereof. Pryor v. Construction Co., 170 Mo. 448; Chadwick v. Kelley, 187 U. S. 540; Heman v. Schulte, 166 Mo. 409 (affirmed without opinion, 189 U. S. 507); French v. Asphalt Paving Co., 181 U. S. 324 (affirming same case in 158 Mo. 534, and other cases immediately following the French case in 181 U. S. to page 404); Heman v. Allen, 156 Mo. supra. It may be that the power of the Legislature to define the taxing district is limited by a prohibition against including in such district property which cannot as a matter of law be benefited by the improvement. But if property may be benefited, the determination of the Legislature that it is benefited is final. Including property in the taxing district is such a determination. Spencer v. Merchant, 125 U. S. 353; Pryor v. Construction Co., 170 Mo. 448; French v. Barber Asphalt Paving Co., 181 U. S. 337; Chadwick v. Kelley, 187 U. S. 540. Or the Legislature may leave to commissioners the determination of the lots to be assessed. Wright v. Davidson, 181 U. S. 379; St. Louis v. Rankin, 96 Mo. 497. Third: Of the apportionment of the assessment in the taxing district according to: (a) The front foot rule. City of St. Charles ex rel. v. Deemar, supra; Heman v. Gilliam, 171 Mo. 264; Barber Asphalt Paving Co. v. French, supra; Webster v. Fargo, 181 U. S. 394; Chadwick v. Kelley, 187 U. S. 140; Schaefer v. Werling, 188 U. S. 516. (b) The area rule. Pryor v. Construction Co., 170 Mo. 448; Heman v. Schulte, supra. (c) The assessed valuation of the property to be determined by officers or commissioners. Lockwood v. St. Louis, 24 Mo. 22; Fallbrook Irrigation District v. Bradley, 164 U. S. 176. (d) The specifically ascertained benefit to be determined by officers or commissioners. Wright v. Davidson, supra; St. Louis v. Rankin, supra. (e) Specific amount per area or

frontage.   Egyptian Levee Co. v. Hardin, 27 Mo.
495; Parsons v. District of Columbia, 170 U. S. 45;
Spencer v. Merchant, 125 U. S. 345.   Fourth: That
the property in the district is benefited to the amount
of the assessment chargeable against it, under the ap-
portionment provided for.   Pryor v. Construction Co.,
supra; Barber Asphalt Paving Co. v. French, supra;
Heman v. Allen, supra; Smith v. Worcester, 182 Mass.
232, 59 L. R. A. 730.   (3)   The provisions of article
10 of the Constitution of Missouri in regard to taxation
are only applicable to taxation in the ordinary accep-
tation of the term, and are wholly inapplicable to spec-
ial assessments.   Farrar v. St. Louis, 80 Mo. 386.   So
held as to section 3, providing for uniformity of taxa-
tion upon the same class of subjects.   St. Joseph to
use v. Owen, 110 Mo. 455; Farrar v. St. Louis, 80 Mo.
386; Adams v. Lindell, 5 Mo. App. 210 (affirmed 72
Mo. 198).   So held as to section 4, providing that all
property shall be taxed in proportion to value.   St.
Joseph to use v. Owen, supra; Farrar v. St. Louis, su-
pra; Adams v. Lindell, supra; Egyptian Levee Co. v.
Hardin, supra; Newby v. Platte County, 25 Mo. 270;
Garrett v. St. Louis, 25 Mo. 509.   So held as to section
11, fixing the rate of taxation.   Farrar v. St. Louis,
supra; Adams v. Lindell, supra.   (4)   (a)   No notice
is required by constitutional provision or otherwise to
be given the property owners respecting those matters
which the Legislature itself determines.   Spencer v.
Merchant, supra; Williams v. Eggleston, 170 U. S. 311;
St. Louis v. Rankin, 96 Mo. 497.   (b)   Publication of
notice to the property owners and opportunity to be
heard before the tribunal upon whom is devolved the
duty of ascertaining facts, and acting thereon, in the
special assessment procedure, satisfies the constitu-
tional requirements and due process of law as to those
matters to be passed upon by such tribunal.   Eyssell
v. St. Louis, 168 Mo. 616; Springfield to use v. Weaver,
137 Mo. 672; St. Louis v. Rankin, 96 Mo. 506; Goodrich

v. Detroit, 184 U. S. 432; King v. Portland, 184 U. S. 61. Section 14 of article 6 of the charter of St. Louis complies with this requirement. (c) It is only with respect to the questions of fact which are to be passed upon by such tribunal that the property owner is entitled to notice. Fallbrook Irrigation District v. Bradley, 164 U. S. 175; St. Louis v. Rankin, 96 Mo. 497. (5) (a) Special assessment legislation which keeps within the legislative sphere as indicated in point 2, and provides for notice to the property owners in the manner pointed out in point 4, does not violate constitutional provisions, whether of the State or of the United States, guaranteeing to every person equal protection of the laws, prohibiting the enactment of special laws or class legislation, prohibiting the depriving of any person of life, liberty or property without due process of law (if such prohibition means more than to require notice as above mentioned), when its provisions are general and operate impartially, equally, uniformly and alike on all persons and property in similar circumstances or similarly situated or under the same circumstances and conditions, or coming within a class to which the law applies, such class including all similarly situated, and when the classification is based upon conditions and circumstances of natural differences in the relation of the property affected to the subject-matter and object of the law. Cases under point 2, supra; also Elting v. Hickman, 172 Mo. 257 (poll-tax case); State ex inf. v. Ins. Co., 150 Mo. 113 (excepting certain insurance companies from anti-trust act of March 24, 1897); State. v. Whitaker, 160 Mo. 59 (screens on electric street cars); Magoun v. Bank, 170 U. S. 283 (Illinois inheritance tax); Clark v. Titusville, 184 U. S. 329 (occupation tax regulated by amount of sales made); Orr v. Gilman, 183 U. S. 278 (New York transfer tax); Jenkins v. Neff, 186 U. S. 230 (National Bank & Trust Co. taxation). (b) But in the matter of designating the property among all which may be benefited by the improve-

ment, and which might therefore be included in the taxing district, that which shall bear the cost of the improvement, constitutional provisions and principles do not require the Legislature to base its rule of inclusion in and exclusion from the taxing district upon the elaborately reasonable classification as above set forth, but it may lawfully draw the boundary line arbitrarily within what it might lawfully constitute the taxing district, provided the rule of inclusion and exclusion is general and operates alike, impartially and uniformly on all similarly situated, with respect to the improvement. This proposition necessarily follows from the rules of law stated and authorities cited under point 2. But express authority for it can be found in numberless cases besides the two here cited: Farrar v. St. Louis, 80 Mo. 394; Cass Farm Co. v. Detroit, 181 U. S. 398. (c) Objections on the ground of individual hardship, inequalities and the like, do not show the law to be unconstitutional or invalid, nor authorize judicial interference. French v. Barber Asphalt Paving Co., 181 U. S. 335; Mattingly v. Dist. Columbia, 97 U. S. 692; Heman v. Schulte, 166 Mo. 415; Heman v. Allen, 156 Mo. 543; Farrar v. St. Louis, 80 Mo. 394; Chadwick v. Kelley, 187 U. S. 544; Garrett v. St. Louis, 25 Mo. 513; Egyptian Levee Co. v. Hardin, 27 Mo. 498. (6) (a) It follows from point 2 that, when the taxing district has been fixed by valid legislation, and when the apportionment of the cost of the improvement upon the property in the district has been so fixed, the owner of the property in the district can not be heard to contend in the courts that his property was not in fact benefited, or that it was not benefited to the amount assessed in accordance with such apportionment. Pryor v. Construction Co., 170 Mo. 451. (b) And it also follows that where the taxing districts and amount of assessments are determined by a commission or tribunal in accordance with valid legislation, where that method is provided, and where notice and opportunity to the

property owners to be heard has been given, as indicated in point 4, then such owners whose property is so assessed can not be heard in any other case or proceeding to contest questions so determined by such commission or tribunal. St. Louis v. Rankin, 96 Mo. 507. (7) The charter of the city of St. Louis, adopted by vote of its people, pursuant to the provisions of sections 20 to 25 inclusive of article 9 of the Constitution of Missouri, has, with respect to the matter of special assessments for local improvements and other municipal matters, all the force and effect of an act of the General Assembly. St. Louis v. Fischer, 167 Mo. 660; Pryor v. Construction Co., 170 Mo. 448. (8) The provisions of the charter involved in this case are contained in section 14 of article 6. They are valid under the construction contended for herein. The basis of the assessment to pay for the improvement as therein set forth is the benefit to the property and the apportionment is based on accessibility of the property to the improvement. When the law directs the assessment to be made on the "property" in the taxing district according to a stated ratio of apportionment, the "lot" or tract is the unit of property against which the separate taxbills shall be issued. Farrar v. St. Louis, 80 Mo. 394; Wolfort v. St. Louis, 115 Mo. 139. The definition of "lot" given by this section was merely drafting into written law what had theretofore, in the absence of written law to the contrary, been the unwritten law in special assessments. Wolfort v. St. Louis, 115 Mo. 144; Kemper v. King, 11 Mo. App. 128; Construction Co. v. Loevy, 64 Mo. App. 437; Fitzgerald v. Adams, 61 Mo. 500; Chester v. Eyre, 181 Pa. 642. The word "property" as used in that portion of the section which provides the first exception from the "midway line" as the boundary of the area district: "If the property adjoining the street to be improved is divided into lots, the district line shall be so drawn as to include the entire depth of all lots fronting on the street to be improved," refers

to all the property collectively adjoining the improvement, and not to each separate lot. It would be a palpable contradiction to speak of a "lot" being divided into lots when the lowest unit of division is the lot. "Fronting" means the same as "adjoining," or "abutting," or "bounding," or "on the line of," "bordering," and the like. Wolfort v. St. Louis, 115 Mo. 139; Moberly v. Hogan, 131 Mo. 25; Seibert v. Tiffany, 8 Mo. App. 36. The assessment is against the entire lot and not against the frontage or front line merely. The second exception to bounding the taxing district by the "midway line," namely: "If the line drawn midway as above described would divide any lot lengthwise or approximately lengthwise, and the average distance from the midway line so drawn to the nearer boundary line of the lot is less than twenty-five feet, the district line shall in such case diverge to and follow the said nearer boundary line," does not apply to lots adjoining the street to be improved, but to those other lots intersected by such line, because: 1. Adjoining lots are clearly, fully and completely provided for by the first exception. 2. Neither of these exceptions purports to be a limitation upon the other. 3. Full force can not be given to the language of either exception by making one a limitation upon the other. 4. The evident intention of the framers of this section was that the first exception applied to all adjoining lots, and no other, and the second to no adjoining lots, as shown by considering the entire plan of assessment provided for as well as the language used. The fact that a lot has the advantage of joining more than one street does not prevent it from being assessed—lawfully assessed—for the improvement of any street, or all the streets, it adjoins. Moberly v. Hogan, 131 Mo. 25; Wolfort v. St. Louis, 115 Mo. 139; Allen v. Krenning, 23 Mo. App. 561.

*Randolph Laughlin* for respondent.

The taxbill in suit is void because the district on which the assessment is based is not established according to section 14 of article 6 of the new amended charter of the city of St. Louis. (1) The rules of construction applicable to this contention are as follows: (a) The principle of special taxation is that the property benefited should bear the burden in proportion to the benefit, and no construction will be adopted which runs counter to this principle if any other construction be possible. Kansas City v. Bacon, 157 Mo. 463; Lockwood v. St. Louis, 24 Mo. 22; Newby v. Platte County, 25 Mo. 271. (b) The charter provision is in derogation of the common law, and must therefore be strictly construed in favor of the property owner and against the tax. Kansas City v. Swope, 79 Mo. 446; Leach v. Cargill, 60 Mo. 316. (c) Where a special tax results in an apparent inequality or injustice, every question of doubtful construction must be resolved in favor of the property owner and against the tax. Halpin v. Campbell, 71 Mo. 494; Verdin v. St. Louis, 131 Mo. 30. (d) A reasonable and beneficial meaning should be ascribed to a law where its literal sense will fairly permit it, and when the language is subject to construction the results and consequences of any proposed interpretation of a charter provision may properly be considered as a guide to the probable intent of its language. State ex rel. v. Slover, 126 Mo. 652; Spitler v. Young, 63 Mo. 42; State ex rel. v. Diveling, 66 Mo. 375; Steppacher v. McClure, 75 Mo. App. 135. (2) The purpose of the definition of the word "lot" in paragraph 8 of section 14 of article 6 is to explain what would otherwise be ambiguous. The definition should not be used for the purpose of defining and establishing the tax district, but should only be used to determine what property it is to be applied to after the district has been established in accordance with the other provisions of

the charter. Any other interpretation would do violence to the following rules of statutory construction: (a) Courts, in the interpretation of laws, will not stick to the letter but will look for the intention and the meaning, and the intention of the law, when found, will always prevail over the literal sense of its terms. State ex rel. v. Bixman, 162 Mo. 1; State ex rel. v. Talty, 166 Mo. 529; Stubbs v. Mulholland, 168 Mo. 47; Springfield v. Starke, 93 Mo. App. 80. (b) Every word of the law should be given force rather than that any word should perish by construction. Sutherland on Statutory Construction, p. 317, sec. 239; p. 319, sec. 240; St. Louis v. Lane, 110 Mo. 254; Warren v. Paving Co., 115 Mo. 592; Duff v. Carr, 91 Mo. App. 16; Springfield v. Starke, 93 Mo. App. 70. To give the word "lots," as used in the condition to the exception, the construction contended for by appellants, would be to render meaningless surplusage the very language of the condition of the exception itself, which is, "If the property adjoining the street to be improved is divided into lots." An application of the definition in paragraph 8 to the word "lots," as used here, would change the entire meaning of the condition, so much so that the exception which follows it would then apply without any condition whatever. To say that property "is divided into lots" when it is in fact an acre tract without any division whatever is obviously a contradiction in terms. (3) Irrespective of the foregoing, the language of the exception proper does not fit the facts in this case. The word "adjoining" is generic; the word "fronting" is specific; the generic is not included in the specific, and adjoining lots are not included in the provision "the district line shall be so drawn as to include the entire depth of all lots fronting on the street to be improved," unless they in fact front out upon and face such street. Hoffman v. Columbus, 50 Ohio St. 471. A contrary construction would do violence to the following: (a)

To section 4160, Revised Statutes 1899, which declares that words and phrases shall be taken in their plain and ordinary or usual sense. (b) To the rule of construction that the intention of an act will always prevail even over the literal sense of its terms. (c) To the rule that some meaning must, if possible, be given to each and every word in an act, rather than that any word should perish by construction. By holding the two words to be synonymous, either the word "fronting" or the word "adjoining" is rendered meaningless surplusage. (d) To the rule that a new law is to be construed with reference to the prior state of the law, and to the evils or inequalities which prompted and induced its enactment and which it was designed to remedy. State ex rel. v. Hostetter, 137 Mo. 649; Greely v. Railroad, 123 Mo. 163; Dowdy v. Wamble, 110 Mo. 283; City of Albany v. Gilbert, 144 Mo. 230. (e) To the rule that the results and consequences of any proposed interpretation of a law may properly be considered as a guide to its probable intent, and a reasonable construction will be adopted in preference to an unreasonable one. (4) Independent of the above, and even if we concede that the exception applies in this case, yet the following language in paragraph 4 of section 14 constitutes a limitation on the exception: "If the line drawn midway as above described would divide any lot lengthwise or approximately lengthwise, and the average distance from the midway line so drawn to the nearer boundary line of the lot is less than twenty-five feet, the district line shall in such case diverge to and follow the said nearer boundary line." The rules of construction applicable to this language are as follows: (a) An affirmative enactment of a new rule implies a negative of whatever is not included or is different; and if, by the language used, a thing is limited to be done in a particular case, it includes a negative that it shall not be done otherwise. Ex parte Joffee, 46 Mo. App. 360. (b) Where a statute expresses first a general in-

tent and afterwards an inconsistent particular intent, the latter will be taken as an exception to the former, and both will stand. Ex parte Joffee, 46 Mo. App. 360. (c) *Expressio unius exclusio alterius.* State ex rel. v. Fisher, 119 Mo. 344. The expression of the idea that the midway line shall diverge when the boundary line is less than twenty-five feet away, excludes the other idea that it shall diverge when the boundary line is more than twenty-five feet away. (5) To construe the provision requiring the divergence of the midway line when the nearer boundary line of the lot through which it is drawn is less than twenty-five feet away to apply only to lots which do not front upon the street, but are yet within the taxing district, would do violence to the following rules of statutory construction: (a) There is no rule of construction which will justify a court in giving to an act a definite meaning by adding something to it which is not somewhere disclosed or indicated within its four corners. State ex rel. v. Ashbrook, 154 Mo. 375. (b) To the presumption that the framers of the law were acquainted with the existing and prior state of the law upon the subject on which they were legislating including the construction which such legislation had theretofore received. McKay v. Minner, 154 Mo. 608. (c) To the rule that all law will be given a reasonable construction, and not one which produces an absurdity or works an injustice, the presumption being that the law-makers never intended to enact a law incapable of being intelligibly and uniformly and equally enforced. (d) To the rule that no construction will be adopted which runs counter to the principle of special taxation (that the burden shall be proportioned to the benefit), if any other construction be possible. (e) To the rule that the charter provision, being in derogation of the common law, will be strictly construed in favor of the property owner and against the tax (f) To the rule that when a tax appears unequal, every question of doubtful construction, of whatever charac-

ter, will be resolved in favor of the property owner and against the tax. (g) To the rule that all rules of interpretation must yield to distinct evidence of legislative intent, which should be always made effective. (6) The construction for which we contend could not be more aptly expressed than it is expressed by the language used. Any attempt to convey the same idea by a change in the language will cause the idea to perish by construction. (7) If it be suggested that the midway line does not divide the respondent's property "lengthwise, or approximately lengthwise," to this we reply: (a) The words "lengthwise, or approximately lengthwise," are to be liberally construed in favor of the property owner, so as to include property which is divided "crosswise, or approximately crosswise." This construction is required by the rules of interpretation last enumerated. (b) The respondent's property was in fact divided lengthwise, in the strict and literal sense of that term, at the time the midway line was drawn. Said line was drawn, and the taxing district was required to be definitely fixed, at the date of the first publication of the notice of hearing required by paragraph 1 of section 14 of article 6 of the new amended charter.

GANTT, J.—This is a suit in equity to cancel two special taxbills made out, certified and registered by the president of the Board of Public Improvements and the Comptroller of the city St. Louis, and at the time of the bringing of this suit ready for delivery to the contractor in payment for the improvements of Texas avenue in the city of St. Louis between Miami and Potomac streets. The plaintiff is the owner of the property against which an assessment was made for a proportionate part of the cost; the defendant Henry Ruckert is the contractor who did the work. The cause was heard upon an agreed statement of facts.

The circuit court decreed the cancellation of one of the taxbills and denied it as to the other. The prop-

erty of plaintiff affected by the suit is accurately described in a plat made by plaintiff and wife and filed July 28, 1902, after the taking effect of the ordinance for the improvement of Texas avenue, which plat will accompany this opinion.

Meier v. St. Louis.

In his petition plaintiff describes the several pieces, 1, 2 and 3, as indicated on the plat, as three distinct tracts of ground, whereas the city authorities treated it as two, and made out one taxbill to cover 1 and 2 as one tract, and number 3 as a second tract.

It is conceded that the ordinance undertook to define the taxing or area district, and in so doing used the word "east" instead of "west" in section four of the ordinance, thereby excluding a tier of lots from the taxing district which the charter required to be included. When the president of the board and the officials whose duty it is to cause the apportionment to be made, came to make out the taxbills, they properly followed the charter instead of the ordinance, and included these lots in the taxing district.

The burden of the plaintiff's case, however, is that in defining the taxing district the city authorities did not draw the line on the west midway between Texas avenue, the street to be improved, and Ohio avenue, the next parallel street on the west, but included the whole of plaintiff's property in block 1566, a tract running from Texas avenue to Ohio avenue, and fronting on Miami street, and this resulted in a levy of the tax on the west half of plaintiff's said tract, and it is of this he complains, alleging that he is willing and ready to pay his proportionate share of the cost of said improvement based upon the proportion that the east half of his said tract and all of his tract number 3 as designated on said plat, bears to the whole area of the taxed district, and denies that the said west half and the lots in tract number 2 are liable for said improvement on the area assessment provided for by the amended charter in section 14 of article 6 thereof. On the other hand the defendant city insists that all of the plaintiff's said tract constitutes but one lot and that in the meaning of the charter it fronts on said Texas avenue and the district should include the whole of it. Defendant Ruckert, the contractor, admits the facts al-

leged in the petition, and asks that if the bills be found void the prayer of the petition be granted, and the city authorities be required to issue to him other tax-bills in accordance with the taxing district and apportionment to be fixed by the court.

With the exception of the alleged mistake in using the word ''east'' instead of ''west,'' the proceedings were all regular down to the fixing of the district.

The constitutionality of the charter provisions is assailed and for this reason and because the city of St. Louis is a party defendant, jurisdiction is vested in this court to determine this appeal.

I.    It is now the settled law in this court that special assessments for local improvements are referable to the taxing power. [Garrett v. St. Louis, 25 Mo. 505; Heman v. Allen, 156 Mo. 534; Barber Asphalt Co. v. French, 158 Mo. 534; Ibid. v. Ibid., 181 U. S. 324.]

It is within the power of the Legislature to create special taxing districts, and to charge the cost of a local improvement, in whole or in part, upon the property in said districts, either according to valuation or superficial area or frontage. [Webster v. Fargo, 181 U. S. 394; Pryor v. Construction Co., 170 Mo. 439; Asphalt Co. v. French, 158 Mo. 534; Spencer v. Merchant, 125 U. S. 345; Egyptian Levee Co. v. Hardin, 27 Mo. 495.]

It has also been ruled that the provisions of article 10 of the Constitution of Missouri in regard to taxation, are applicable only to taxation in the ordinary acceptation of the term, and are inapplicable to these special assessments. [Farrar v. St. Louis, 80 Mo. 379, and cases cited.] And the same rule is held as to sections 3, 4 and 11, as to the uniformity of taxation. [Farrar v. City of St. Louis, supra; City of St. Joseph to use v. Owen, 110 Mo. 445.] The objections to the charter amendments on the ground of unconstitutionality are not, therefore, tenable.

II.   As to the contention that the special assessments amount to a taking of plaintiff's property without due process of law, it may be said that no notice is required by the Constitution to be given property-owners respecting those matters which the Legislature itself determines, or delegates to the municipal authorities. [Spencer v. Merchant, 125 U. S. 345; Williams v. Eggleston, 170 U. S. 304; St. Louis v. Rankin, 96 Mo. 497.]   Publication of notice to the property-owners, and opportunity to be heard before the tribunal upon which is devolved the duty of ascertaining facts and acting therein in the special assessment procedure, satisfies the constitutional requirement, and is due process of law as to those matters to be passed upon by such tribunal.

We think section 14 of article 6 of the amended charter of St. Louis complies with this requirement.

When the taxing district has been fixed by valid legislation and when the apportionment of the cost of the improvement upon the property in the district has been so fixed, the owner of the property in the district can not be heard to contend in the court that his property was not in fact benefited, or to the amount assessed in accordance with such apportionment. [Pryor v. Construction Co., 170 Mo. 439.]

The charter of St. Louis adopted by a vote of its people in obedience to an express grant by the Constitution of the State, has, with respect to municipal matters, including special assessments for local improvements, all the force and effect of an act of the Legislature.   [City of St. Louis v. Fischer, 167 Mo. 654; Pryor v. Construction Co., 170 Mo. 439; St. Louis v. Gleason, 15 Mo. App. 25; Ibid v. Ibid., 93 Mo. 33; Kansas City v. Oil Co., 140 Mo. 468.]

III.   Having considered the constitutional objections, we are brought to the real question involved in the record, and that is the proper construction of section

14 of article 6 as to the creation of the taxing or area district provided by the charter. We have fully considered this provision of the charter in the cases of Collier Estate v. Western Paving and Supply Company, and Nellie B. Kauffman et al. v. Western Paving and Supply Company, ante, page 362.

In that case, as in this, the property charged with three-fourths of the cost of the improvement was an unplatted tract which had never been divided into lots, and the contention of the city and contractor was that it should be treated as one lot. But in that case, as in this, the property fronted on a street other than that to be improved, and we ruled that the words "adjoining" and "fronting" in this section of the charter were not synonymous. It was there pointed out that the framers carefully discriminated throughout the charter in the use of the terms "fronting," "adjoining" and "abutting."

We conceded that these words might be so used that the context would indicate that they meant the same thing, but we thought that when the language appeared to be so carefully chosen, and a different word used in reference to each distinct subject or condition, it was our duty to give each its true signification, so that every word of the statute should have some meaning and purpose.

Wherever in the charter an assessment for a street improvement is directed to be levied upon a linear or front-foot basis, the phrases, "fronting upon or adjoining," "fronting upon or bordering on," are used. Wherever a sidewalk tax is levied it is upon "the abutting property," but when the three-fourths or area assessment is provided, the midway line in the block fixes the area, except "if the property adjoining the street is divided into lots, the district line shall include the entire depth of all lots *fronting* upon the street to be improved." It seemed clear that if no distinction had been intended in the last-named exception the clause

would have read as it does in the linear rule, "if the property *fronting or adjoining* the line should be drawn so as to include the entire depth of the lots fronting or adjoining," but the word "adjoining" is carefully excluded in this exception, and consequently "the property or lot fronting" includes only such property as actually fronts or faces upon the street to be improved. In the Collier and Kauffman cases we held that as the property did not *front on the street to be improved* it did not fall within the exception. We also held that as the property had never been divided into lots as specified by the charter, for that reason also it did not fall within the exception to the midway rule for the ascertainment of the area to be taxed. It will be observed that the exception treats of "lots," and then provides that the word "lot" as used in this connection shall be held to mean the lots as shown by recorded plats of additions or subdivisions, but if there be no such recorded plat, or if the owners have disregarded the lines of *lots* so platted, and have treated two or more lots or fractions as one lot, then the whole parcel of ground, or lots so treated as one, shall be regarded as a lot for the purpose hereof." This provision does not meet the conditions presented in this case, because there are no two or more lots treated as one and fronting upon the street to be improved, to-wit, Texas avenue, for the plaintiff's lot faces and fronts on Miami street. Nothing herein said, and nothing said in the Collier and Kauffman cases, is intended to change the construction placed by this court upon a similar provision of section 18 of article 6, of the St. Louis charter prior to these amendments in Wolfort v. City of St. Louis, 115 Mo. 139.

Given a case under these amendments in which property has been divided into lots platted and recorded, or into lots unplatted and two or more thereof are used as one lot by the owner and *the same front upon the street to be improved,* it will be perfectly allowable to levy the tax on the linear basis upon the

whole as one lot, or to assess the area tax thereon as one lot according to this exception, but where property has never been divided into lots at all, either platted and recorded, or divided into lots not platted and recorded, then this exception *ex vi termini* has no application and the midway rule must govern. Without then repeating all that was said on this point in the Collier and Kauffman cases, our conclusion is that the circuit court correctly held that the city authorities improperly drew the district line on the west at the eastern line of Ohio avenue, and thereby included the west half of plaintiff's property in the taxing district for the purposes of the three-fourths cost of the street improvement of Texas avenue.

We are also of the opinion that the circuit court correctly dismissed the bill as to tract numbered 3, or the four lots fronting on Texas avenue, as the tax levied thereon was the proportionate part that tract would be required to pay under any circumstances, if indeed not. less than it would be required to pay, because in proportion that the area of the district is decreased the individual property therein would bear a proportionately larger part of the whole cost of the improvement.

For reasons assigned in this and in the Collier and Kauffman cases, the judgment of the circuit court is affirmed. All concur.